**The STATE of Ohio**

v.

**BROWN.**

Court of Common Pleas of Ohio,
Ashtabula County.

No. 95–CR–017.

Decided Sept. 13, 1995.

**100**

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

*Gregory J. Brown,* Ashtabula County Prosecuting Attorney, for plaintiff. *Carolyn Kaye Ranke,* for defendant.

---

GARY L. YOST, Judge.

The defendant seeks to suppress evidence seized from his motor vehicle following his arrest for DUI. The facts are uncomplicated.

The defendant was driving his Ford pickup truck north on State Route 45 in the village of Orwell at approximately 2:35 a.m. on December 4, 1994. Officer Michael Roach of the Orwell Village Police Department observed the defendant weaving, crossing left of the center yellow line twice. When the officer activated his pursuit lights, the defendant immediately veered to the right, pulling halfway off the road. As the officer approached the defendant's vehicle, he saw the defendant fumbling with something in the center of the vehicle near the floor area. Standing within two feet of the driver-side window, the officer could smell an odor of alcoholic beverage. While talking with the defendant, he observed the defendant's arm under a windbreaker on the front seat of the vehicle. After the defendant produced his operator's license, the officer required him to get out of the vehicle. The defendant was first given a portable breath test, which indicated an alcohol concentration in excess of .05. The officer next administered a horizontal gaze nystagmus test, which the officer interpreted as evidence that the defendant was under the influence of alcohol. The officer further observed that the defendant's eyes were red and bloodshot. In addition, the officer put the defendant through certain balance tests, which were not performed satisfactorily. At that point, the defendant was placed under arrest for operating a motor vehicle while under the influence of alcohol and was handcuffed behind his back. The officer then conducted a search of the defendant's person, finding twenty-six rounds of 9mm ammunition in the defendant's pocket. He asked the defendant if he had a gun in the truck, to which the defendant said no. The defendant was then placed in the back seat of the police cruiser.

The officer called for a tow truck and proceeded to search the defendant's vehicle. On the seat under the windbreaker, the officer found a loaded 9mm automatic pistol. In addition, the officer discovered another magazine for the gun, containing eight live rounds, in the truck. He then advised the defendant that he would be charged with carrying a concealed weapon.

The defendant was transported to the Orwell Police Department, where he submitted to an Intoxilizer test, indicating a breath-alcohol level of .069. After the Intoxilizer test, the defendant was read his *Miranda* warnings.

The defendant denies that he was weaving or that he crossed the center line, and that the officer ever asked him if there was a gun in the truck. He admits that the loaded pistol was under the windbreaker on the seat and that an additional magazine for the gun was in the truck. He further testified that the officer found the twenty-six additional rounds of ammunition in the truck and not in the defendant's pocket.

■ Once the defendant, the sole occupant of the vehicle, was removed from the vehicle, handcuffed behind his back, and placed in the police cruiser, the officer had no basis to search the vehicle as an incident to the defendant's arrest. *State v. Brown* (1992), 63 Ohio St.3d 349, 588 N.E.2d 113. There was no threat that the defendant might seek a weapon from the vehicle with which to resist arrest or effect his escape. Furthermore, the officer did not observe contraband or other suspicious items in plain view that might otherwise justify this search.

Locating twenty-six rounds of ammunition in the defendant's pocket would create a reasonable inference that a weapon is nearby. However, it is not illegal to transport firearms in a motor vehicle, provided that it is done in accordance with law. Since the defendant was already handcuffed at the time the officer stated he discovered the bullets, the mere presence of the ammunition would not alter the basis on which the officer would be authorized to search the defendant's vehicle.

■ The arresting officer in this case testified that the search of the defendant's vehicle was an inventory search prior to impounding the vehicle. He further stated that his inventory was in accordance with the policy of the Orwell Police Department. Following the defendant's arrest for DUI, with no one else available to take charge of his truck, it was reasonable to impound the vehicle.

■ When a vehicle is impounded, the police may conduct a valid inventory search of the vehicle, without a warrant, provided that it is conducted in good faith and in accordance with reasonable, standardized procedures or established routine. *State v. Hathman* (1992), 65 Ohio St.3d 403, 604 N.E.2d 743.

■ Inventory searches involve caretaking procedures that do not violate the Fourth Amendment. The procedures serve to protect the owner's property while it is in police custody, the police from claims or disputes over lost or stolen property, and the police from potential danger. *South Dakota v. Opperman* (1976), 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000.

■ Nevertheless, a claimed inventory search will not be upheld in the absence of a policy or practice designed to produce an inventory. *Florida v. Wells* (1990), 495 U.S. 1, 110 S.Ct. 1632, 109 L.Ed.2d 1.

■ Although a written inventory policy would seem logical and desirable, the courts have not required that a police department's policy governing inventory searches be in writing. Still, there should be evidence that a policy actually exists and that officers who conduct inventories are familiar with the requirements of the policy. A valid inventory policy should identify the circumstances when an inventory will be done, the extent of the search, and the procedures to be followed. It should also be demonstrated that the requirements of the policy are consistently followed, to assure that the inventory is not being used as a pretext to search.

In *State v. Swilley* (May 19, 1994), Franklin App. No. 93APA11–1551, unreported, 1994 WL 198797, the court would not uphold a claimed inventory search where the state failed to present evidence of any standardized procedure or established routine for conducting inventory searches. Similarly, the state has not presented evidence of a standardized procedure or established routine utilized by the Orwell Police Department in conducting inventory searches, or that the procedures were followed in this case. There is no evidence that an inventory was actually made of the contents of the defendant's vehicle. No inventory list was presented at the hearing to document what property was in the vehicle. There was no testimony by the arresting officer that he inventoried any items other than the gun and magazine that were seized.

On the state of the record it is impossible for the court to determine whether the Orwell Village Police Department has a reasonable, standardized procedure or established routine for conducting inventory searches, or whether the arresting officer in this case complied with the policy. In the absence of a search warrant, it is incumbent upon the state to elucidate the facts or circumstances which justify governmental interference with the basic liberty of a citizen.

In the absence of facts upon which the court can determine that a valid inventory search was made, the only remaining reason for the search would be a pretext to look for weapons. Obviously, such a reason does not satisfy constitutional requirements.

The motion to suppress evidence is SUSTAINED. The 9mm handgun and magazine seized from the defendant's vehicle, as well as statements or admissions which may have flowed from the discovery and seizure of these items, are suppressed from use against the defendant in the prosecution of this case.

IT IS SO ORDERED.

*Motion granted.*