**The STATE of Ohio**

v.

**DUNCAN.**

Court of Common Pleas of Ohio,
Cuyahoga County.

No. CR–328857.

Decided March 20, 1996.

8

*Stephanie Tubbs Jones,* Cuyahoga County Prosecuting Attorney, and *Mark Major,* Assistant Prosecuting Attorney, for plaintiff.

*Robert Brooks,* for defendant.

BURT W. GRIFFIN, Judge.

Defendant Anthony Duncan has filed this motion to suppress evidence of three packets of crack cocaine seized from the pocket of his jacket that was found in the trunk of his automobile as a result of a warrantless search. The following facts were adduced at a hearing on the motion.

On June 24, 1995, the Cleveland Police Department received a report from Melissa Canon and her mother that the defendant had attempted to take money from Ms. Canon in a struggle at her house, that he had hit Ms. Canon, that he said he would return, and that they feared he had a gun. The police were told by the Canons that they knew the defendant to possess a gun.

Meanwhile, the defendant, who apparently himself suffered an injury in the struggle with Ms. Canon, went to Lutheran Hospital, where he was overheard by another police officer to make a phone call to Ms. Canon. In the call, defendant threatened to harm Ms. Canon if she reported the incident to the police.

Based upon that information, the defendant was arrested by Cleveland police at Lutheran Hospital. A search of his person at the hospital did not reveal a gun.

The defendant had driven to the hospital alone in an automobile owned by his mother. When police learned that the automobile was parked on the street near the hospital, they searched the car without a warrant. They did not find a gun in the main compartment of the car but opened the trunk. In the trunk, a police officer saw the defendant's Starter jacket. Reaching into a pocket, he found the drugs that are the subject of this motion. There was no testimony that, by feeling the outside of the pocket, the officer could determine that drugs were inside.

## THE ISSUE

In light of the recent fight with and threat to Melissa Canon, the police had probable cause to arrest the defendant and to search the defendant's vehicle for a weapon without a warrant. Even though the defendant was in custody, time was of the essence to retrieve any gun that might be accessible to the defendant. The automobile, which belonged to the defendant's mother, might be moved simply as a result of a telephone call from jail by the defendant to his mother. Upon release from jail on bond, the defendant might gain access to the gun. Public safety required that the police find the gun as quickly as possible if it were in the motor vehicle.

■ The validity of this search cannot, however, be predicated on the public necessity of finding a gun. The police could readily ascertain whether a gun was in defendant's jacket merely by feeling the outside of the jacket. Reaching into the pocket of the jacket was not a necessary outgrowth of the search for a gun.

■ The state justifies the search as proper pursuant to a right to impound and inventory the car. No evidence was offered that the car was illegally parked or that its prolonged presence on the street would violate any parking laws. The police attempted to justify the impoundment on the ground that such action was necessary to protect the car from vandalism or theft.

■ Merely because the driver of a vehicle is taken into custody does not justify impoundment. The state must show that a law would be violated, that a danger would be posed to others if impoundment did not occur, that no reasonable alternative existed for safeguarding the vehicle, or that the impoundment was made pursuant to a reasonable police regulation. *South Dakota v. Opperman* (1976), 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000; *Colorado v. Bertine* (1987), 479 U.S. 367, 107 S.Ct. 738, 93 L.Ed.2d 739; *Florida v. Wells* (1990), 495 U.S. 1, 110 S.Ct. 1632, 109 L.Ed.2d 1. No evidence was presented that the vehicle was illegally parked or obstructed traffic. No evidence was presented that the defendant desired it to be towed for safekeeping or could not have called his mother (the owner of the car) or a friend to move the vehicle. The state has, thus, not sustained its burden of showing the reasonableness of towing this vehicle.

■■ Assuming, however, that the impoundment was lawful, the question remains whether the search of the pocket in defendant's jacket met Fourth Amendment standards. The state justifies the search of the jacket's pocket as a routine inventory search. A routine inventory search is reasonable if performed pursuant to standardized policy and "the evidence does not demonstrate that the procedure involved is merely a pretext for an evidentiary search of the impounded vehicle." *State v. Robinson* (1979), 58 Ohio St.2d 478, 12 O.O.3d 394, 391 N.E.2d 317; Katz, Ohio Arrest, Search and Seizure (1995 Ed.) at 220.

■ Courts have recognized that the inventory search exception to the warrant requirement of the Fourth Amendment can easily be used as a pretext to search for evidence without a warrant. *State v. Smith* (1992), 80 Ohio App.3d 337, 609 N.E.2d 212; *State v. Tobasso* (May 29, 1975), Cuyahoga App. No. 34031, unreported. To avoid such pretextual searches of motor vehicles, the courts have required police departments to promulgate regulations concerning the scope of a permissible inventory of a lawfully impounded vehicle. *Florida v. Wells* (1990), 495 U.S. 1, 110 S.Ct. 1632, 109 L.Ed.2d 1 (closed suitcase could not be searched); *State v. Hathman* (1992), 65 Ohio St.3d 403, 604 N.E.2d 743 (plastic bag under a

tire could not be searched). The regulations must address the scope of the search that can be conducted as a part of the impoundment. "The individual police officer must not be allowed so much latitude that inventory searches are turned into a 'purposeful * * * means of discovering evidence of crime.'" *Florida v. Wells*, 495 U.S. at 4, 110 S.Ct. at 1635, 109 L.Ed.2d at 6.

In *State v. Hathman, supra*, the Supreme Court of Ohio reviewed the decision in *Wells*. The Ohio Supreme Court noted that in *Wells* the United States Supreme Court had ruled "that standardized criteria or established routine must regulate the opening of containers found during inventory searches to avoid the possibility that such searches will become a ruse for general rummaging to uncover evidence of a crime." *Hathman*, 65 Ohio St.3d at 407, 604 N.E.2d at 746.

The court in *Hathman* concluded:

" * * * the existence of a reasonable policy or procedure governing inventory searches in general is insufficient to justify the opening of closed containers during the inventory search. Rather, some articulated policy must also exist which regulates the opening of containers found during the authorized inventory search. * * * "

" * * * [W]e hold that the opening of the closed containers found during the inventory search of appellee's vehicle was constitutionally impermissible * * *." *Id.* at 408, 604 N.E.2d at 746.

Applying that analysis, the court in *Hathman* suppressed the contents of a white plastic bag that was found under the spare tire in the trunk of the defendant's car.

In the present case, the state has offered General Police Order 22–87 of the Cleveland Police Department as evidence that the department has placed controls on the officer's discretion in conducting an inventory search. The order simply says, "Property such as jewelry, cameras, radios, TVs, golf clubs, clothing and other valuables shall be removed from the vehicle prior to towing." Nothing in the order places controls on or gives guidance to the police officer in deciding when to go into briefcases, suitcases, purses, wallets, bags, zippered pockets of clothing, or other items of property that are often used to carry and ensure privacy of materials and whose contents are not immediately apparent without their being opened. Thus, if this case involved the usual "closed container," a court following *Hathman* would be obliged to grant the motion to suppress.[1]

1. The *Hathman* court declined to follow *United States v. Wilson* (C.A.7, 1991), 938 F.2d 785, and *State v. Bonin* (R.I.1991), 591 A.2d 38, where the courts had found it unnecessary for a police agency to adopt policies giving guidance about closed containers.

This case does not, however, involve the usual "closed container." The container here was an unfastened coat pocket within which were three plastic baggies containing crack cocaine. The record does not reveal whether the baggies were opaque or glassine or whether the contents of the baggies were apparent.

The testimony also did not show that the jacket pocket was searched as part of a routine inventory of the vehicle. That is, the testimony did not show that, based on the decision to arrest defendant, the vehicle was routinely being searched incident to a decision to tow the vehicle and in the course of preparing an inventory report sheet. Rather, the evidence suggests that the "inventory search" justification was an after-the-fact justification of a search for a weapon and any other incriminating evidence. There was no testimony that, prior to entering the trunk of the vehicle or prior to searching the jacket, the police had called for a tow vehicle or that they discovered the plastic bags while preparing an inventory report sheet.

Based on the avowed reason for initially searching the vehicle, the search of the jacket should have ceased when the touching of it revealed no weapon. Thereafter, if the pockets were searched in the course of preparing an inventory report sheet while preparing the vehicle for towing, one could conclude that the search of the jacket was not a pretext for searching for evidence of a crime. But the evidence does not show that such a procedure caused the officer to check inside the pockets of the Starter jacket.

Accordingly, the state has not met its burden of showing that the search of the jacket occurred pursuant to a routine inventory rather than as a pretext to search for evidence.[2]

Had a Cleveland police order been presented which demonstrated that policies had been established for searching clothing and containers in impounded vehicles and that standards existed for deciding when to impound a vehicle, or if the pockets had been searched in the course of preparing an inventory report sheet, a different conclusion might have been required in this case.[3]

---

**2.** See *State v. Brown* (C.P.1995), 74 Ohio Misc.2d 98, 659 N.E.2d 390 (testimony is necessary that inventory policy exists which identifies circumstances when an inventory can be done, the extent of the inventory, and procedures to be followed); *State v. Weinstein* (M.C.1995), 69 Ohio Misc.2d 33, 649 N.E.2d 936 (a policy on inventory searches must give guidance to police officers as to circumstances which would give rise to the opening of closed containers during an inventory search).

**3.** Beginning with *Colorado v. Bertine* (1987), 479 U.S. 367, 107 S.Ct. 738, 93 L.Ed.2d 739, the courts have placed emphasis on the importance of police departments' issuing regulations to control the discretion of police officers in inventory searches. The approach has significance for the separation of powers, which the courts are apparently now prepared to recognize. By

However, no such standards apparently exist to guide impoundments and inventory searches, and the evidence does not show that the jacket was searched in the course of a "routine inventory."

The motion to suppress is granted. Trial is set for April 8, 1996 at 9:00 a.m. in case Nos. 328857 and 329347.

IT IS SO ORDERED.

*Motion granted.*

―――――

asking the police first to promulgate regulations governing inventory searches, the courts have given the police leaders the opportunity to express to the courts, prior to litigation, what is reasonable under the Fourth Amendment when an inventory search is undertaken. Presumably, police regulations for inventory searches will be drafted in consultation with lawyers for city government who will be conscious both of the limitations of the Fourth Amendment and the interests of ordinary citizens in their own privacy and the protection of their property. Heretofore, when Fourth Amendment issues have arisen, the courts have assumed sole responsibility in defining the reasonableness of a search. Under the approach in *Bertine*, *Wells*, and *Hathman*, the courts are ceding to leaders of the executive branch the first opportunity to define what is reasonable and are sharing with them the power to construe the Fourth Amendment.