THE STATE OF OHIO, APPELLANT, *v.* HATHMAN, APPELLEE.

[Cite as *State v. Hathman* (1992), 65 Ohio St.3d 403.]

404

(No. 91–1820—Submitted October 20, 1992—Decided December 14, 1992.).

*John E. Meyers,* Prosecuting Attorney, and *Ronald J. Mayle,* Assistant Prosecuting Attorney, for appellant.

*Buchanan & Associates* and *J. Vincent Buchanan,* for appellee.

---

DOUGLAS, J.   The court of appeals determined that the opening of the closed containers (white plastic bag and its contents) found during the inventory search of appellee's automobile violated the Fourth Amendment prohibition against unreasonable searches and seizures and, therefore, the evidence seized during the inventory search could not be used by the state to prove the charges against appellee.   We are persuaded by the well-reasoned opinion of the court of appeals and, for the reasons that follow, we affirm.

An inventory search of a lawfully impounded vehicle is a well-defined exception to the warrant requirement of the Fourth Amendment to the United States Constitution.   See, generally, *South Dakota v. Opperman* (1976), 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000, and *Bertine, supra.*   In *Opperman,* the United States Supreme Court explained that the exception derives from the principle that valid inventory searches involve administrative caretaking

functions which serve important governmental interests in protecting property which is in police custody, in ensuring against frivolous claims of loss, stolen or vandalized property, and in guarding the police from danger. *Id.* at 369–371, 96 S.Ct. at 3097–3098, 49 L.Ed.2d at 1005–1006. The court reasoned that since standard caretaking procedures are unrelated to criminal investigation, the policies underlying the Fourth Amendment warrant requirement are not implicated in the context of an administrative inventory search. *Id.* at 370, 96 S.Ct. at 3097, 49 L.Ed.2d at 1006, fn. 5. See, also, *Bertine, supra,* at 371, 107 S.Ct. at 741, 93 L.Ed.2d at 745. Even though inventory searches are routine noncriminal procedures, the validity of such searches is judged by the Fourth Amendment's standard of "reasonableness." See *Opperman* and *Bertine, supra.*

In *Opperman, supra,* the United States Supreme Court upheld as reasonable a routine inventory search of the contents of a lawfully impounded automobile. During the inventory search, police opened the unlocked glove compartment of the automobile and discovered a quantity of illegal drugs. In holding that the inventory search was "not unreasonable" under the Fourth Amendment, the court emphasized that the search was conducted in accordance with *standard police procedures,* and that no evidence suggested that the procedures were used as a subterfuge for an investigatory search. *Id.* at 376, 96 S.Ct. at 3100, 49 L.Ed.2d at 1009.

In *Bertine, supra,* the United States Supreme Court specifically addressed the question whether police may open containers found during an inventory search of a lawfully impounded vehicle. In *Bertine,* a backpack was discovered by police during an inventory search of the contents of a van. The backpack was opened and was found to contain a number of closed metal canisters. The canisters were then opened and were found to contain illegal drugs, drug paraphernalia, and $700 in cash. Another $210 in cash was found in a sealed envelope in a separate compartment of the backpack.

In *Bertine, supra,* the court held that the opening of the containers found during the inventory search did not violate the Fourth Amendment prohibition against unreasonable searches and seizures. Specifically, the court determined that the inventory search was conducted pursuant to *standardized police procedures* designed to promote legitimate governmental objectives, and that there was no showing the police acted in bad faith or for the sole purpose of investigation. *Id.* at 372–376, 107 S.Ct. at 741–743, 93 L.Ed.2d at 746–748. In concluding that the inventory search was conducted pursuant to standardized procedures, the *Bertine* majority emphasized that the police department's policy for impounding vehicles mandated a detailed inventory

involving the opening of closed containers and a listing of the contents thereof. *Id.* at 374, 107 S.Ct. at 742, 93 L.Ed.2d at 747, fn. 6.

In its more recent decision in *Wells, supra,* the United States Supreme Court reviewed the propriety of an inventory search conducted by the Florida Highway Patrol. In *Wells,* an automobile was impounded after its owner was placed under arrest. At the impoundment facility, the trunk of the automobile was opened with the owner's permission. A locked suitcase found in the trunk was forced open, and a garbage bag containing a considerable amount of marijuana was discovered. Defendant Wells was charged with possession of a controlled substance and the state trial court denied his motion to suppress the marijuana obtained during the inventory search. On appeal, the Supreme Court of Florida held that the trial court erred in denying the motion to suppress.

In *Wells,* the United States Supreme Court affirmed the judgment of the Supreme Court of Florida, stating that:

"In the present case, the Supreme Court of Florida found that the Florida Highway Patrol had no policy whatever with respect to the opening of closed containers encountered during an inventory search. We hold that absent such a policy, the instant search was not sufficiently regulated to satisfy the Fourth Amendment and that the marijuana which was found in the suitcase, therefore, was properly suppressed by the Supreme Court of Florida." *Id.* at 4–5, 110 S.Ct. at 1635, 109 L.Ed.2d at 7.

In reaching this conclusion, the *Wells* majority reiterated the principles set forth in *Bertine, supra,* and earlier cases that standardized criteria or established routine must regulate the opening of containers found during inventory searches to avoid the possibility that such searches will become a ruse for general rummaging to uncover evidence of a crime. *Id.* at 4, 110 S.Ct. at 1635, 109 L.Ed.2d at 6.

With the foregoing discussion in mind, we believe that in order to satisfy the requirements of the Fourth Amendment to the United States Constitution, an inventory search of a lawfully impounded vehicle must be conducted in good faith and in accordance with reasonable standardized procedure(s) or established routine. *Opperman, Bertine* and *Wells, supra.* Further, if, during a valid inventory search of a lawfully impounded vehicle, a law-enforcement official discovers a closed container, the container may only be opened as part of the inventory process if there is in existence a standardized policy or practice specifically governing the opening of such containers. *Bertine* and *Wells, supra.*

In the case at bar, there is ample evidence that the decision to conduct the inventory search of appellee's automobile was made in accordance with

standardized procedures of the Ohio State Highway Patrol. Further, we are satisfied that the inventory search of appellee's vehicle was conducted in good faith, and not for the sole purpose of investigation. However, our reading of *Bertine* and *Wells, supra,* is that the existence of a reasonable policy or procedure governing inventory searches in general is insufficient to justify the opening of closed containers encountered during the inventory search. Rather, some articulated policy must also exist which regulates the opening of containers found during the. authorized inventory search.

We agree with the court of appeals that there is no evidence in this case of any standardized policy or practice of the Ohio State Highway Patrol specifically governing the opening of closed containers found during inventory searches. State Trooper Aleshire's testimony concerning the scope of an inventory search related to the areas (or parts) of a vehicle which are normally searched, *i.e.,* the interior, trunk, glove box, etc. Therefore, we find that Aleshire's testimony falls short of establishing that some policy or practice of the Highway Patrol governed the opening of the closed containers. Consistent with our interpretation of *Bertine* and *Wells, supra,* we hold that the opening of the closed containers found during the inventory search of appellee's vehicle was constitutionally impermissible, and that the evidence seized as a result must be suppressed.

We recognize that the case now before us can be distinguished from *Wells, supra,* in several ways. Nevertheless, we believe that the overall thrust of *Bertine* and *Wells, supra,* requires the result that we have reached here today. Additionally, we have considered the state and federal cases cited by appellant in support of its proposition that the opening of the closed containers was constitutionally permissible, namely, *State v. Bonin* (R.I.1991), 591 A.2d 38; *United States v. Wilson* (C.A.7, 1991), 938 F.2d 785, certiorari denied (1992), 503 U.S. ——, 112 S.Ct. 946, 117 L.Ed.2d 115; *United States v. Gallo* (C.A.5, 1991), 927 F.2d 815; and *United States v. Kornegay* (C.A.10, 1989), 885 F.2d 713, certiorari denied (1990), 495 U.S. 935, 110 S.Ct. 2179, 109 L.Ed.2d 508. However, we find that these cases either misapplied the law pronounced in *Wells* and *Bertine, supra,* to the facts, or involved some particular policy or practice governing the opening of containers encountered during inventory searches. In the case at bar, we have found no such policy or practice relating to the opening of the containers found in the trunk of appellee's automobile.

Accordingly, we affirm the judgment of the court of appeals.

*Judgment affirmed.*

MOYER, C.J., SWEENEY, WRIGHT and H. BROWN, JJ., concur.

HOLMES and SPELLACY, JJ., dissent.

LEO M. SPELLACY, J., of the Eighth Appellate District, sitting for RESNICK, J.

HOLMES, J., dissenting. The specific issue presented here involves whether any discretion may be allowed a police officer in what is looked at during an impoundment inventory search. Even more precisely, the issue here is whether under *Florida v. Wells* (1990), 495 U.S. 1, 110 S.Ct. 1632, 109 L.Ed.2d 1, and *Colorado v. Bertine* (1987), 479 U.S. 367, 107 S.Ct. 738, 93 L.Ed.2d 739, ·an Ohio State Highway Patrolman may examine the contents of a plastic shopping bag found in the trunk of a car being impounded, which bag is in sight, not stapled, tied, taped, or otherwise secured, when the specifically stated policy of the Ohio State Highway Patrol requires the officer to inventory everything in the vehicle that is accessible to him.

In *Bertine,* the defendant was stopped and arrested for driving under the influence of alcohol. Before the arrival of a tow truck to take the defendant's van to an impoundment area, a backup officer inventoried the van and opened up a closed backpack in which he found controlled substances and a large amount of cash. The United States Supreme Court held this inventory search not to be violative of the defendant's Fourth Amendment rights in that there was a local police procedure which required the opening of closed containers and the listing of their contents in vehicles to be impounded. The court further stated:

" 'When a legitimate search is under way, and when its purpose and its limits have been precisely defined, nice distinctions between closets, drawers, and containers, in the case of a home, or between glove compartments, upholstered seats, trunks, and wrapped packages, in the case of a vehicle, must give way to the interest in the prompt and efficient completion of the task at hand.' *United States v. Ross, supra* [ (1982), 456 U.S. 798], at 821 [102 S.Ct. 2157 at 2171, 72 L.Ed.2d 572 at 591]." *Id.,* 479 U.S. at 375, 107 S.Ct. at 743, 93 L.Ed.2d at 747–748.

In *Wells, supra,* the defendant was stopped for speeding by a Florida highway patrolman and was arrested after the officer smelled alcohol on his breath. The defendant's automobile was taken to an impoundment area, and the defendant allowed the officer to open the trunk. Therein the officer observed a closed suitcase. Employees at the trooper's station, finding the suitcase to be locked, forced open the suitcase and found a plastic bag filled with marijuana.

The Florida Supreme Court reversed the denial of the motion to suppress the bag of marijuana as evidence. The United States Supreme Court affirmed the Florida Supreme Court, holding that absent any highway patrol policy

with respect to opening of closed containers encountered during an inventory search, the instant search was insufficiently regulated to satisfy the Fourth Amendment. The court pointed out that "the Supreme Court of Florida found that the Florida Highway Patrol had no policy whatever with respect to the opening of closed containers encountered during an inventory search." *Id.* at 4–5, 110 S.Ct. at 1635, 109 L.Ed.2d at 7.

However, the court stated that where there exists "standardized criteria," or a "established routine" of the local police department, nothing in *South Dakota v. Opperman* (1976), 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000, or *Illinois v. Lafayette* (1983), 462 U.S. 640, 103 S.Ct. 2605, 77 L.Ed.2d 65, " 'prohibits the exercise of police discretion so long as that discretion is exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity.' " *Id.*, 495 U.S. at 3–4, 110 S.Ct. at 1635, 109 L.Ed.2d at 6, citing *Bertine, supra,* 479 U.S. at 375, 107 S.Ct. at 748, 93 L.Ed.2d at 743. Further, the court stated: "A police officer may be allowed sufficient latitude to determine whether a particular container should or should not be opened in light of the nature of the search and characteristics of the container itself." *Id.*, 495 U.S. at 4, 110 S.Ct. at 1635, 109 L.Ed.2d at 6.

The United States Supreme Court in *Wells* concluded that inventory searches " 'serve to protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen or vandalized property * * * '." *Id.*, citing *Bertine, supra,* 479 U.S. at 372, 107 S.Ct. at 741, 93 L.Ed.2d at 745–746.

At the suppression hearing here, on direct examination, Daniel S. Aleshire, the Ohio state trooper who inventoried the defendant's automobile, was asked the question, "[W]hat's the Patrol's policy about what to do with a car when you arrest the driver?" His answer was, "[The] standard procedure is to make an administrative inventory of the vehicle so nothing gets lost between the time that we turn it over to the wrecker service and it's returned back to the party, if and when."

Officer Aleshire further testified on direct as follows:

"Q [Prosecutor] What is the Patrol's policy about the inventorying of how much of the car? Do you just inventory the passenger compartment or any other parts of the car, or what?

"A [Aleshire] Any area of the car that's accessible to me.

"Q Okay. And what do you mean by 'accessible'?

"A The whole interior of the car. Under the seats, glove box, engine compartment, trunk, if there's a key.

" * * *

"Q How did the key situation work on this 1980 Toyota?

"A The ignition key fits the ignition, the doors and the trunk."

The officer then stated that when he opened the trunk, he saw an old spare tire and could see something white lying under the tire. He lifted the tire and saw the white plastic K–Mart shopping bag that had been wedged underneath. On cross-examination, he testified that he then rolled the top of the bag back and saw that the contents thereof contained a large amount of cash and a pill container. The cash was later inventoried to be two $100's, ten $50's, 147 $20's, 131 $10's, 72 $5's, and 132 $1's, a total of $5,442.

Ohio State Patrol Officer Choya R. Hawn, the arresting officer at the scene, testified as to the Highway Patrol's inventory policies as follows:

"A [Hawn] Well, any time that you take the Defendant away from the vehicle you assume responsibility for it if he's going to be incarcerated, or if he's not going to be able to be returned to the vehicle.

"Q [Prosecutor] Who says so?

"A The Highway Patrol policies say so.

"Q Okay. That's your Patrol—your employer's policy dictates that?

"A Yes, sir, that's correct.

"Q Okay. And without my interrupting you, just state that policy, please?

"A Just any time that you assume responsibility for a vehicle—it can be a vehicle that's involved in an accident, where the subjects are taken to the hospital * * * or any time that someone is arrested and there's no one else to remain with the vehicle, you're not going to make other arrangements for the vehicle to be removed, it has to be inventoried and has to be towed and you have to wait with it until the wrecker signs for it and assumes responsibility for it from you."

The trial court, upon denying the motion to suppress the contents of the bag, held:

"However, both officers, and especially Trooper Hawn, clearly indicated that the Ohio State Highway Patrol has an administrative policy that whenever the driver or owner of a vehicle is being separated from the vehicle they make a search of the vehicle to protect themselves and the owner-driver, in the event there is any subsequent claim of missing property from the vehicle.

"The right to do that administrative search doesn't depend on whether or not the Defendant is under arrest or not, whether a search warrant could have been secured or not, it is an administrative policy.

"There has been no evidence to indicate that that is not the policy of the Patrol, or that that policy is somewhat limited, depending on the circumstances.

"Therefore, the Court accepts that evidence as what it stated it was; therefore, this was a valid administrative or inventory search, and it was a result of that search that the officers had the right to make the search; the search, including the search of the trunk, was valid."

At the suppression hearing, as previously noted, Officer Aleshire testified that he was required under Ohio Highway Patrol policy to inventory everything in an impounded vehicle that was accessible to him. "Accessible" is defined by Webster's Third New International Dictionary (1986) 11, as "capable of being reached or easily approachable"; by the Random House Dictionary of the English Language, Unabridged (2 Ed.1987) 11, as "easy to approach, reach, enter * * * " and as "obtainable, attainable"; and by I The Oxford English Dictionary (2 Ed.1989) 73, as "affording entrance" and as "come into the presence of, reach, or lay hold of."

While the Highway Patrol policy does not use the specific words "closed containers," it does require the officer to inventory everything accessible to him, which would include the contents of all easy-to-open or reach containers. The Seventh Circuit has held *Florida v. Wells* does not require a policy to use the buzz words "closed container"; rather, the substance of the policy must be examined to determine if in fact it authorized the action actually taken. See *United States v. Wilson* (C.A.7, 1991), 938 F.2d 785.

The court of appeals below reversed on the basis that, while there was a policy to conduct an administrative inventory search of an impounded vehicle, there was no specifically stated policy regulating the opening of closed containers found during inventory searches. This is an unfortunate hyper-technical reading of *Florida v. Wells*. After all, the main purpose of an inventory search is to account for all property in a vehicle being impounded before it is exposed to possible loss or vandalism at the impound area. What could be more consistent with the proper security of the property than having the officer identify everything he can easily reach?

This is not a case where the officer had to pry the container open, use a torch to cut away some metal, pick a lock, or even rip a bag open, which might raise an issue whether the bag's contents were in fact accessible. A photo of the bag is in evidence and that evidence shows the bag to be in an undamaged condition. Officer Aleshire testified, "I just folded it down to where you could see what it was, yes." It obviously was an easy thing to do. The patrol's policy controlled, the contents of the bag were properly inventoried, and the trial court properly overruled the motion to suppress.

Accordingly, I would reverse the judgment of the court of appeals and reinstate the judgment of the trial court.

SPELLACY, J., concurs in the foregoing dissenting opinion.