DECISION
This is an appeal by defendant, Alan M. Copeland, from a judgment of conviction and sentence entered by the Franklin County Court of Common Pleas following defendant's plea of guilty to possession of cocaine after the trial court overruled a motion to suppress evidence.
On May 8, 1998, defendant was indicted on one count of possession of cocaine, in violation of R.C. 2925.11. On June 17, 1998, defendant filed a motion to suppress, asserting that evidence obtained from a search of his automobile was not subject to any of the exceptions for a warrantless search.
On October 13, 1998, the trial court conducted a hearing on defendant's motion to suppress. At that hearing, Columbus Police Officer Tennis D. Jude testified on behalf of the state and provided the following testimony.
On March 1, 1998, Officer Jude was on patrol with his partner, Officer Sean Sparhawk. The officers made a traffic stop of a vehicle near the intersection of 17th Avenue and Cleveland Avenue. The officers stopped the vehicle for an equipment violation involving a rear license plate light. The defendant was driving the vehicle accompanied by a male passenger.
The officers got out of their cruiser and approached the vehicle; Officer Jude walked up to the passenger side of the vehicle while his partner approached the driver's side. Officer Jude observed the male passenger "with his left hand put a vial between the driver's seat and the middle console of the vehicle." (Tr. 6.)
The defendant and the passenger were asked to step out of the vehicle and the officers conducted a pat down of the two individuals. While patting down the defendant, Officer Sparhawk observed a crack pipe stem showing from defendant's shirt pocket.
The defendant and his passenger were then placed in the police cruiser. Officer Jude went back to defendant's vehicle and looked between the driver's seat and the console for the vial but it was not there. Officer Jude later found the vial under the driver's seat. The vial contained what appeared to be crack cocaine.
Officer Jude testified that, after retrieving the vial, "I went to do an inventory of the vehicle." (Tr. 11.) When asked why he did the inventory, Officer Jude stated, "[w]ell, it was going to be impounded * * * for numerous violations." (Tr. 11.) The officer stated that "[t]here were drugs found to be inside the vehicle, therefore that is the reason I did the inventory." (Tr. 11.) He also stated that "the main reason we do inventory is to see if there is any valuables or anything." (Tr. 11.) When asked whether there was a procedure he follows in conducting an inventory search, Officer Jude stated, "[w]e list any items that are valuable on an inventory impound slip." (Tr. 12.) He further stated that there is a manual that covers inventory searches.
Officer Jude stated that he observed a briefcase in the backseat and "inside of the briefcase I looked for valuables, and inside of the briefcase there were also some like vials." (Tr. 12.) The "vial" described by the officer was a prescription bottle, containing the defendant's name and a prescription number. Officer Jude opened the vial and observed five baggies of suspected crack cocaine. The officer went back to the cruiser and "asked whose briefcase it was, and Mr. Copeland stated it was his briefcase." (Tr. 15.) The defendant indicated that he was holding the contraband for someone named Wendy.
During cross-examination, Officer Jude stated that he did not have at the hearing any of the inventory forms indicating the inventory of the car or the briefcase. The vehicle was subsequently impounded and towed away.
Officer Sean Sparhawk also testified on behalf of the state. At the time Officer Sparhawk patted down the defendant, the officer discovered two crack pipes. The defendant told Officer Sparhawk that the crack pipes belonged to "Wendy," a local prostitute.
On October 15, 1998, the court conducted a further hearing of the matter and ruled that "nothing leading up to the finding of the crack pipe on this defendant violated hisfourth amendment rights." (Tr. 46.) The court further ruled that, "although I was initially inclined to agree with the defense on the search of the briefcase, upon review of the case law cited, the court is going to find that there is nothing violative of hisFourth Amendment rights in the search of that briefcase." (Tr. 46.) Thus, the trial court stated to defense counsel that "your motion to suppress is overruled." (Tr. 46.)
At that time, defense counsel asked for clarification regarding the court's ruling on testimony at the suppression hearing by the police officer who opened a prescription pill bottle taken from the briefcase. As noted above, the officer testified that he was looking for valuables inside the pill bottle. Defense counsel requested "a point of clarification that the court's ruling as well that this was also part of the inventory search, and that the search of the bottle does not violate my client's constitutional rights." (Tr. 48.) The trial court then stated that it would "suppress the evidence that was found in the pill bottle inside of the closed briefcase." (Tr. 48.) The case was then adjourned until October 21, 1998.
On October 21, the trial court indicated that it had reconsidered its prior ruling. Specifically, the court held that it would "not suppress the evidence as I previously held and will hereby reverse my previous order to that effect and overrule the defendant's motion to suppress." (Tr. 51.)
The trial court conducted a further hearing on the matter on November 30, 1998. At that hearing, the trial court noted the following for the record:
 DURING THE COURSE OF THE PREVIOUS HEARING, I HEARD NO TESTIMONY OR ARGUMENT THAT AT THE TIME THE DEFENDANT'S BRIEFCASE WAS SEARCHED THAT THE POLICE WERE ENGAGED IN AN INVESTIGATORY SEARCH. LATER TESTIMONY OF THE TWO OFFICERS DISCLOSED THAT AN INVENTORY SEARCH OF THE VEHICLE AND ITS CONTENTS WAS IN PROGRESS AT THE TIME THAT THE OFFICERS LOCATED THE CONTRABAND IN THIS CASE, AND FOR THAT PURPOSE ONLY, THAT BEING AN INVENTORY SEARCH, THE OFFICER OPENED YOUR BRIEFCASE, AND THE SUBJECT BOTTLES, PILL BOTTLES, AS I UNDERSTAND THEM, INCLUDING VIALS LABELED PRESCRIPTIONS BELONGING TO YOU, TO DETERMINE WHETHER ANY ITEMS OF VALUE, SUCH AS MONEY OR JEWELRY, WERE CONTAINED THEREIN. INSTEAD, THEY FOUND FIVE PLASTIC BAGGIES CONTAINING CRACK COCAINE.
 PURSUANT TO COLORADO VERSUS BRUTIN, THE FOURTH AMENDMENT DOES NOT PROHIBIT THE STATE FROM PROCEEDING WITH THE CHARGES AGAINST YOU WITH THE CRACK COCAINE DISCOVERED DURING AN INVENTORY SEARCH OF THE BRIEFCASE LOCATED ON THE BACK SEAT OF THE SUBJECT VEHICLE.
 IT IS MY UNDERSTANDING YOU HAVE ADMITTED OWNERSHIP OF THE BRIEFCASE. ACCORDINGLY, THE COURT WILL NOT SUPPRESS THE EVIDENCE AS I PREVIOUSLY HELD, AND I HEREBY OVERRULE AND REVERSE MY PREVIOUS ORDER TO THAT EFFECT. (Tr. 2-3.)
Following the court's ruling, the defendant withdrew his previously entered not guilty plea and entered a plea of no contest. By entry filed December 3, 1998, defendant was sentenced to five years of community control sanctions.
On appeal, defendant sets forth the following single assignment of error for review:
 The Trial Court erred when it overruled Defendant's motion to suppress evidence found through the warrantless search of Defendant's closed prescription pill bottles and Defendant's briefcase found in the back of the automobile that Defendant was driving.
In the present case, it is undisputed that the search of defendant's vehicle was performed without a search warrant. At issue is whether the search by police of defendant's briefcase and pill bottles was appropriate as an inventory search.
In State v. Hathman (1992), 65 Ohio St.3d 403, paragraph one of the syllabus, the Ohio Supreme Court held that, "[t]o satisfy the requirements of the Fourth Amendment to the United States Constitution, an inventory search of a lawfully impounded vehicle must be conducted in good faith and in accordance with reasonable standardized procedure(s) or established routine." The court further held that "the existence of a reasonable policy or procedure governing inventory searches in general is insufficient to justify the opening of closed containers encountered during the inventory search. Rather, some articulated policy must also exist which regulates the opening of containers found during the authorized inventory search." Id. at 408.
In State v. Peagler (1996), 76 Ohio St.3d 496, the court discussed the holding in Hathman as it relates to the inventory of closed containers, noting:
 The Hathman court held that the search was unreasonable and therefore unconstitutional because no evidence was presented showing that the Ohio State Highway Patrol had in existence at the time any standardized policy or practice specifically governing the opening of closed containers found during inventory searches. * * *
 When, however, police impoundment policy specifically addresses the inventory of closed containers and governs the procedures to be used by the police, the opening pursuant to this policy of a closed container by the police is not pretextural and thus is reasonable for Fourth Amendment purposes. Peagler, supra, at 502-503.
In the present case, defendant contends that the state failed to present evidence, based on the requirement of Hathman, of a standardized policy or practice specifically governing the opening of closed containers. Upon review, we agree with defendant's contention. The transcript of the hearing indicates that Officer Jude testified in general about an inventory procedure. Specifically, when asked whether there was a procedure he followed in doing an inventory, he responded, "[w]e list any items that are valuable on an inventory impound slip. And whatever items are valuable, we list on that slip." (Tr. 12.) Officer Jude also responded affirmatively when asked whether there was a manual that covers inventory searches and whether he opened the briefcase and pill container as part of his inventory search. The officer provided no testimony, however, regarding what the standardized policy was regarding the opening of closed containers or whether his conduct was in conformity with that procedure.
In State v. Wilcoxson (July 25, 1997), Montgomery App. No. 15928, unreported, the court held that "[a] police officer's bare conclusory assertion that an inventory search was done pursuant to police department policy is not sufficient, standing alone, to meet the state's burden of proving that a warrantless search was reasonable because it fits within the inventory search exception to the warrant requirement." Rather, the court held, "the evidence presented must demonstrate that the police department has a standardized, routine policy, demonstrate what that policy is, and show how the officer's conduct conformed to that standardized policy." Id. In State v. Corrado (Feb. 20, 1998), Lake App. No. 96-L-104, unreported, the court held that the search by police of a closed container did not meet the requirements of Hathman, supra, stating:
 * * * [T]he state had to prove * * * that the agents opened the blue plastic bag pursuant to a standardized policy or practice specifically governing the opening of containers. Hathman, supra, paragraph two of the syllabus. Lieutenant Ebert testified, at the suppression hearing, that, generally, whenever an arrest is made and an automobile is involved, it is standard procedure for two LCNA agents to inventory its contents. Lieutenant Ebert did not testify as to the details of this policy and did not say the agents were specifically required by internal regulation to open the blue bag. Without evidence of the policy as it relates to such containers, an inventory search of containers found in a vehicle is constitutionally impermissible. * * * Corrado, supra. (Citations omitted.)
In State v. Swilley (May 19, 1994), Franklin App. No. 93APA11-1551, unreported (1994 Opinions 2217), this court found that the trial court erred in overruling a defendant's motion to suppress where the state failed to present evidence of a standardized policy or practice concerning the opening of closed containers. Specifically, this court held:
 During the motion to suppress, the state presented no evidence of any standardized procedure or established routine for conducting inventory searches; instead, the state's witness testified only that an inventory search was common after an OMVI arrest and explained how this particular inventory was conducted. While the state's witness alluded to a check form used during the process, which may indicate a "routine" procedure, that exhibit is not in the record. Even if it were, however, the weapon was found in a pouch inside the cab of the truck, and the state presented no evidence of a standardized policy or practice specifically governing the opening of containers as part of the inventory process. In the absence of evidence supporting not only the standardized procedures and established routine ordinarily used in conducting an inventory search of a lawfully impounded vehicle, but also the standardized policy or practice specifically governing the opening of containers found during such an inventory, the state's argument regarding a valid inventory search of defendant's vehicle must fail.
Similarly, in the instant case the state has failed to carry its burden of proof that the search was appropriate. As stated above, the prosecution did not present evidence sufficient to show a standardized procedure regarding the opening of closed containers. We note that, while Officer Jude stated that there was a manual covering inventory searches, that manual was not admitted at trial. While we do not hold that the failure to admit the manual was necessarily fatal, the state was required to provide some evidence, other than the bare assertion that a manual exists, as to what the department's standardized "policy is, and show how the officer's conduct conformed to that standardized policy." Wilcoxson, supra. We further note that, although the officer testified that the proper procedure is to provide an inventory list of valuable items, there was no evidence that any items, other than the vials of contraband, were inventoried. In fact, during cross-examination, Officer Jude acknowledged that the remaining contents of the vehicle "were left inside the vehicle." (Tr. 20.) Based upon the authority of Hathman, supra, andSwilley, supra, we conclude that the trial court erred in overruling defendant's motion to suppress.
Based on the foregoing, defendant's single assignment of error is sustained, the judgment of the trial court is reversed and this matter is remanded to the trial court for further proceedings in accordance with law and consistent with this opinion.
Judgment reversed and cause remanded.
KENNEDY, J., concurs.
BROWN, J., concurs separately.