Appellant Darrick Glenn was convicted of violating R.C. 2925.11(A), possession of cocaine, a first-degree felony. The trial court sentenced Glenn to four years' incarceration.
Glenn appeals his conviction, raising three assignments of error. Glenn contends in his first assignment that the trial court erred in overruling his motion to suppress evidence seized from his automobile. In his second assignment, Glenn contends that the trial court erred by not granting his motion for a continuance. In his last assignment, Glenn contends both that the trial court erred by not granting his Crim.R. 29 motion and that his conviction was not supported by sufficient evidence.
Arlington Heights Police Officer Buxsel stopped an automobile driven by Glenn because it did not have a license-plate light. Upon learning that Glenn was driving with a suspended license, Buxsel arrested Glenn. Officer Vaughn, who had responded to Buxsel's call for help, arrested Glenn's passenger, Kenneth Mattress, on an outstanding felony warrant. Because neither Mattress nor Glenn could drive the car, Buxsel called a tow truck to remove it. Before the impoundment, Officers Drake and Vaughn inventoried the automobile and found empty baggies inside the car, what appeared to be marijuana seeds on the floor of the car, and marijuana under the hood. At this point, Buxsel provided Glenn with his rights under Miranda v. Arizona.[1] At a later point, while Glenn was still seated in the cruiser, Vaughn also provided him with his Miranda
rights. Buxsel asked Glenn if he could search the trunk, hood, and glove compartment of the car. Glenn gave oral consent, but when the key could not be found, he withdrew the consent because his mother would be upset if the car was damaged by opening the trunk and glove compartment without a key.
Officer Vaughn requested a drug canine, and Buxsel took Glenn and Mattress back to the police station for processing. Buxsel was later advised that the dog had indicated that the glove compartment and the trunk contained narcotics. He asked Glenn what he had in the glove compartment, and Glenn responded that the compartment held twenty dollars' worth of marijuana.
The automobile was towed to the station, where Vaughn was in the process of typing a search warrant for the car. Officer Upchurch, the officer with the dog, told Glenn about the dog indicating that the car contained narcotics and that Vaughn was drafting a search warrant. He asked Glenn if he wanted to give consent to open the glove compartment, read the consent-to-search form to Glenn, and reviewed Glenn's Miranda
rights with him. Glenn consented. The consent was very broad and allowed a complete search of the car. The police found two bags of crack cocaine that weighed approximately 36 grams and one baggy of marijuana in the glove compartment. When Officer Upchurch confronted Glenn with the crack cocaine detected by the dog, Glenn said, "You got me, he found it." Buxsel advised Glenn that he was under arrest for felony drug abuse.
When Buxsel transported Glenn from the police station to the county jail, Glenn told him that Mattress "had the dope and must have put it in the glove box" when Buxsel removed Glenn from the car. Glenn also said that he and Mattress were on their way to sell the drugs, and that he had been selling crack cocaine for the last year and had been using money from selling drugs to pay child support. Glenn also told Vaughn that he had gotten away with selling drugs a few times.
Glenn moved to suppress the evidence gathered from his car and the statements made by him. The trial court granted that part of his motion relating to the marijuana found under the hood of the car, because the evidence demonstrated that it was not part of the inventory procedure to look under the hood of impounded vehicles. The court denied the remainder of Glenn's motion. In his challenge to the trial court's denial of his motion to suppress, Glenn raises three arguments: (1) the state failed to demonstrate that the stop of his vehicle was warranted, and that the trial court placed the burden on him to establish that the stop was proper; (2) the consent to search was not voluntary; and (3) the search was outside the scope of a routine inventory search.
Buxsel testified that he stopped Glenn because he did not have a license-plate light in violation of R.C. 4513.05. R.C. 4513.05 requires that a car have a lighting mechanism that can be used to illuminate a license plate. The trial court concluded that the stop was justified because the evidence demonstrated that Glenn had no license-plate light. Glenn argues that the stop was unjustified because he was not required to have the license-plate light illuminated under R.C. 4513.03, because it was not yet one-half hour after sunset when he was stopped.
We employ a two-step analysis in reviewing a trial court's ruling on a suppression motion. We first review the trial court's "findings of historical fact only for clear error, giv[ing] due weight to inferences drawn from those facts" by the trial court.[2] Second, we independently determine whether the historical facts meet the applicable legal standard. In this case, that standard is whether the facts "viewed from the standpoint of an objectively reasonable police officer" amounted to a reasonable, articulable suspicion that Glenn had violated R.C. 4513.05.
At a suppression hearing that does not involve a warrant, the state has the burden of proving the validity of a warrantless search and seizure. An investigative stop requires that the police officer making the stop have a reasonable, articulable suspicion of criminal behavior.[3] The observation of a traffic violation provides a reasonable, articulable suspicion for a stop.[4]
While the trial court did comment on Glenn not fully exploring the issue of whether a license-plate light was required because it was not yet one-half hour after sunset, it did not reach its conclusion that the stop was justified on that issue. Instead, it determined that the evidence demonstrated that Glenn's car lacked any license-plate light, making the time of the stop irrelevant. Thus, the trial court did not shift the burden to Glenn to demonstrate that the stop was justified. Further, based on the record, we conclude that the factual determination that Glenn's vehicle was without a light was not clearly erroneous.
As to the voluntariness of Glenn's consent to search the glove compartment, the state had the burden of proving that Glenn's consent to search was voluntary under the totality of the circumstances.[5] Glenn claims his consent was not voluntary because it was the result of the threat that the drug canine might damage the vehicle, and that the officers would obtain a search warrant to enter his car. These circumstances did not, on their own, constitute coercion under the facts of this case.[6] We conclude that the trial court did not err in finding that Glenn's consent was voluntary under the totality of the circumstances.
In Glenn's last argument, he contends that because the Arlington Heights Police Department had no standard form for conducting inventory searches, the search was unconstitutional. He also argues that because Officer Vaughn admitted his search was for contraband, and not an inventory search, the seized evidence should have been excluded.
An inventory search "must be conducted in good faith and in accordance with reasonable standardized procedure(s) or established routines."[7]
The purpose of a standardized policy or practice is to prevent the inventory search from being used as a "ruse for general rummaging to uncover evidence of a crime."[8]
Buxsel testified that the Arlington Heights Police Department had a policy governing inventory searches, and that the policy required that the search be performed at the scene. At the time of the search of Glenn's vehicle, the department did not have official inventory forms, but such forms existed at the time of the suppression hearing. Vaughn testified that every time a vehicle was towed, the Arlington Heights Police Department inventoried it. According to him, the inventory search included looking through the entire vehicle, including the trunk and the glove compartment, and examining the exterior for damage. During the inventory search, the officer also had to check the gas gauge and the odometer. While conducting his inventory search, Vaughn found several empty plastic bags in the vehicle and seed-like material on the floorboard that he believed might be marijuana seeds.
Vaughn also opened the hood. He attempted to open the glove compartment and the trunk, which he could not do. He stated, "My experience is [that a locked glove compartment with no keys is] commonly used in narcotics trafficking." On cross-examination, Vaughn testified that he was originally conducting an inventory search, but that after locating the baggies, he looked under the hood for narcotics, and not for inventory purposes. The trial court suppressed the marijuana found under the hood because the search pursuant to which it was found was not part of the inventory procedure of the Arlington Heights Police Department.
Vaughn's search of the glove compartment did not occur during his inventory search because the compartment was locked and no key was available. That area was searched separately with Glenn's consent. Therefore, we conclude that the trial court did not err in denying this aspect of the suppression motion. We overrule Glenn's first assignment.
In his second assignment, Glenn challenges the trial court's refusal to grant him a continuance. Glenn sought a continuance based on newly retained counsel. The issue was raised a few days before trial
The trial court denied the motion, finding that Glenn was at fault for not making himself available to consult with his initial trial counsel, that the motion was a delay tactic, that newly retained counsel could not proceed to trial until the following month, and that the initial trial counsel could adequately represent Glenn, in spite of the fact that counsel had stated that, while he could represent Glenn, he was "unprepared to go forward in a truly professional manner." The trial court indicated that the full and complete hearing on the suppression motion demonstrated counsel's ability to adequately represent Glenn.
Whether to grant a motion for a continuance rests in the trial court's discretion.[9] When faced with a request for a continuance, the trial court should consider the following: (1) the length of the delay requested; (2) whether other requests for delays have been sought and granted; (3) the inconvenience to others; (4) whether the delay is for legitimate reasons or whether it is dilatory, purposeful or contrived; (5) whether the defendant has contributed to the circumstances giving rise to the request; and (6) any other relevant factors unique to the case.[10] Under the facts of this case, we conclude that the trial court did not abuse its discretion in denying the motion for a continuance. We overrule Glenn's second assignment.
In his third assignment, Glenn challenges the sufficiency of the evidence presented by the state. The sufficiency-of-the-evidence challenge in this case requires us to examine the evidence at trial and determine whether that evidence, viewed in a light most favorable to the state, could have convinced any rational trier of fact beyond a reasonable doubt that Glenn was guilty of possession of cocaine.[11]
Similarly, in the review of the trial court's denial of Glenn's Crim.R. 29 motion, we must determine whether the evidence is "such that reasonable minds [could have] reach[ed] different conclusions" as to whether the state had proved each material
R.C. 2925.11(A) states that "[n]o person shall knowingly obtain, possess, or use a controlled substance." In this case, the controlled substance was crack cocaine in an amount that exceeded 25 grams, but was less than 100 grams. Glenn argues that the state never proved that the crack cocaine was his. We hold that the evidence, construed most strongly in favor of the state, was sufficient to demonstrate beyond a reasonable doubt that Glenn knowingly possessed crack cocaine. We overrule Glenn's third assignment.
Therefore, we affirm the judgment of the trial court.
Sundermann and Shannon, JJ., concur.
Raymond E. Shannon, retired, of the First Appellate District, sitting by assignment.
[1] Miranda v. Arizona (1966), 384 U.S. 436, 86 S.Ct. 1602.
[2] Ornelas v. United States (1996), 517 U.S. 690, 699,116 S.Ct. 1657, 1663.
[3] See Terry v. Ohio (1968), 392 U.S. 1, 88 S.Ct. 1868.
[4] See State v. Parks (Sept. 18, 1998), Hamilton App. No. C-970814, unreported.
[5] See Schneckloth v. Bustamonte (1973), 412 U.S. 218, 248-249,93 S.Ct. 2041, 2058-2059.
[6] See State v. Clelland (1992), 83 Ohio App.3d 474, 481,615 N.E.2d 276, 281.
[7] See State v. Hathman (1992), 65 Ohio St.3d 403, 604 N.E.2d 743, paragraph one of the syllabus.
[8] See State v. Hathman, supra, at 407, 604 N.E.2d at 746, citingFlorida v. Wells (1990), 495 U.S. 1, 4, 110 S.Ct. 1632, 1635.
[9] State v. Unger (1981), 67 Ohio St.2d 65, 423 N.E.2d 1078.
[10] See State v. Unger, supra, at 67-68, 423 N.E.2d at 1080.
[11] State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.