Defendant-appellant Richard Patrick appeals his conviction and sentence from the Licking County Court of Common Pleas on one count of possession of heroin in violation of R.C. 2925.11(A)(C)(6)(a). Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE
On May 27, 1999, the Licking County Grand Jury indicted appellant on one count of possession of heroin in violation of R.C. 2925.11(A)(C)(6)(a), a felony of the fifth degree, and one count of possession of drug paraphernalia in violation of R.C. 2925.14(C)(1), a misdemeanor of the fourth degree. At his arraignment on June 7, 1999, appellant entered a plea of not guilty to the charges contained in the indictment. Thereafter, a Motion to Suppress was filed by appellant on January 13, 2000. Appellant, in his motion, requested that the trial court suppress evidence seized as a result of the warrantless search of appellant's vehicle. Appellee filed a response to appellant's motion on January 20, 2000. The following evidence was adduced at the suppression hearing, which was held on January 21, 2000. On May 13, 1999, Officer Brian Daroe of the Pataskala Police Department was on patrol during the evening hours. At some point during the evening, Officer Daroe received information concerning a possible drunk driver. At the suppression hearing, Officer Daroe testified that an off-duty police officer "called from a cell phone, advised Licking County dispatching of a possible drunk driver, gave the license plate and a description of the vehicle." Transcript of Suppression hearing at 6. The vehicle was identified as a black Chevy Beretta. Upon receiving the information, Officer Daroe began to search for the Beretta. Once Officer Daroe located the Beretta, he began following the same in his police cruiser. After the Beretta pulled into a Duke station, the officer observed appellant exit the vehicle, go inside the Duke station, and then reenter the vehicle after leaving the station. While he was watching the Beretta pull out of the Duke parking lot, Officer Daroe determined that the vehicle did not have a license plate light. For such reason, Officer Daroe initiated a traffic stop of the Beretta, which had pulled into an apartment parking lot. After he was asked for his driver's license, appellant gave Officer Daroe a state I.D. card. At the suppression hearing, the officer testified that appellant "had a slurred speech. His eyes were glassy and red, and he was acting very paranoid. He was twitching his hands." Transcript of Suppression hearing at 10. Once Officer Daroe ran appellant's identification through the computer, he discovered that appellant was driving under an FRA suspension. Appellant was then placed under arrest for operating a motor vehicle while under the influence of alcohol and driving under an FRA suspension. After appellant was placed under arrest, Pataskala Police Officer Steven Garavuso, who was also at the scene of the arrest, began impounding appellant's vehicle with the assistance of Officer Andy Waugh. After informing the Etna Sunoco that a vehicle needed to be impounded, Officer Garavuso began inventorying appellant's vehicle. When Officer Garavuso opened the driver's side door of appellant's vehicle, he observed a pack of cigarettes along the side of the driver's seat. Officer Garavuso testified that "there was a piece of paper folded up into the shape of a triangle inside the plastic wrap [on the outside of the cigarette box] and it was in plain view." Transcript of Suppression Hearing at 17. Officer Garavuso, who was unable to see what the folded piece of paper contained, testified that the piece of paper "looked very typical to the way certain types of narcotics are — are transported or folded up into paper in a manner that doesn't fall out." Transcript of Suppression Hearing at 18. Officer Garavuso then proceeded to photograph the pack of cigarettes before removing it from appellant's vehicle. After removing the pack of cigarettes, Officer Garavuso opened up the folded piece of paper and looked inside. Once he determined that the folded piece of paper contained narcotics, Officer Garavuso folded the piece of paper back up and placed the pack of cigarettes in a brown evidence bag. During a cursory search of appellant's vehicle, Officer Garavuso found a second piece of paper folded in a similar manner to the one that was in the cigarette pack. The second folded piece of paper, the contents of which were not immediately apparent, also was opened, photographed and placed in the evidence bag. The second folded piece of paper also contained heroin. A hypodermic needle and other items of drug paraphernalia were later found in appellant's vehicle. At the conclusion of the suppression hearing, the trial court denied appellant's Motion to Suppress stating on the record as follows: The Court determines in this case that the stop, initial stop was lawful. The defendant was subsequently arrested because of driving under FRA suspension. Car was then impounded pursuant to the policy because of the FRA suspension There was an inventory search pursuant to the impoundment. The Court finds that the impoundment was lawful. There was no arrest — or no warrant. However, the Court finds that it was not necessary to have a warrant under these circumstances. The Court finds that the seizure was lawful. The motion to suppress the items taken and the statements alleged to be fruits of the seizure, motion to suppress each of those is denied.
Transcript of Suppression Hearing at 36. A Judgment Entry denying appellant's motion and ordering appellee to prepare and submit findings of fact and conclusions of law was filed on January 21, 2000. Pursuant to a Judgment Entry filed three days later, the trial court specifically made the following conclusions of law: (1) that probable cause existed to stop and subsequently arrest appellant, (2) that the impoundment and warrantless search of appellant's vehicle was not unreasonable and was performed in accordance with the inventory exception to the warrant requirement and pursuant to Pataskala Police Department policy, and (3) that all of appellant's statements to police were admissible. Thereafter, on February 16, 2000, appellant changed his former plea and entered a plea of no contest to the charge of possession of heroin in violation of R.C. 2925.11(A)(C)(6)(a). The trial court then sentenced appellant to prison for a period of nine months and suspended appellant's driver's license for nine months. A Judgment Entry memorializing appellant's plea and sentence was filed on February 16, 2000. It is from his conviction and sentence that appellant now prosecutes his appeal, raising the following assignments of error:
 I. IN DETERMINING THAT THE SEARCH OF THE DEFENDANT-APPELLANT'S AUTOMOBILE FIT WITHIN THE "INVENTORY" EXCEPTION TO THE WARRANT REQUIREMENT, THE TRIAL COURT COMMITTED HARMFUL ERROR.
 II. IN DETERMINING THAT THE OPENING OF THE "ENVELOPES" FOUND IN THE DEFENDANT-APPELLANT'S AUTOMOBILE FIT WITHIN THE "PLAIN VIEW" EXCEPTION TO THE WARRANT REQUIREMENT, THE TRIAL COURT COMMITTED HARMFUL ERROR.
 I, II
Appellant, in his two assignments of error, challenges the trial court's denial of his Motion to Suppress. Appellant specifically contends that neither the inventory exception nor the plain view exception to theFourth Amendment's warrant requirement were applicable. There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. See State v. Fanning (1982) 1 Ohio St.3d 19, State v. Klein (1991), 73 Ohio App.3d 486, State v. Guysinger (1993)86 Ohio App.3d 592. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. See State v. Williams (1993), 86 Ohio App.3d 37. Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. State v. Curry (1994), 95 Ohio App.3d 93, 96, State v. Claytor (1993),85 Ohio App.3d 623, 627, and State v. Guysinger (1993), 86 Ohio App.3d 592. As the United States Supreme Court held in Ornelas v. U.S. (1996),517 U.S. 690, 116 S.Ct. 1657, ". . . as a general matter determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal." As is stated above, appellant initially argues that the search of appellant's vehicle does not fit within the inventory exception to the warrant requirement. According to appellant, "the search of Mr. Patrick's [appellant's] vehicle falls outside this exception to the warrant requirement as it was not conducted in accordance with any standardized policies, procedures or practices." "An inventory search of a lawfully impounded vehicle is a well-defined exception to the warrant requirement of the Fourth Amendment to the United States Constitution." State v. Hathman (1992), 65 Ohio St.3d 403, 405. Such an inventory search, to satisfy the requirements of the Fourth Amendment, must be conducted "in good faith and in accordance with reasonable standardized procedure(s) or established routine." Id. at 407. See also South Dakota v. Opperman (1976), 428 U.S. 364. If a law-enforcement official, during a valid inventory search of a lawfully impounded vehicle, discovers a closed container, the container may only be opened as part of the inventory process if a standardized policy or practice exists that specifically governs the opening of such containers. Id. at 408. In the case sub judice, there is no evidence of any standardized policy or practice of the Pataskala Police Department specifically governing the opening of closed containers found during inventory searches. See Hathman, supra. None of the officers who testified at the January 21, 2000 suppression hearing testified as to such a policy. In fact, appellee, in its brief, concedes that "the officers did not know what the policy was, if one even existed, as to the collection of evidence and opening of closed containers during an inventory search." Since, therefore, the officers were not justified under the inventory exception to open up the folded pieces of paper found in appellant's vehicle, appellant's first assignment of error is sustained. However, while appellee concedes that the inventory exception is not applicable, appellee maintains that the trial court properly denied appellant's Motion to Suppress since the opening of the folded pieces of paper found in appellant's vehicle falls within the "plain view" exception to the Fourth Amendment's warrant requirement. Appellant, in turn, argues that while the seizure of the cigarette package was legally justified, the opening of the folded piece of paper contained in the plastic wrap on the outside of the cigarette package does not fit within the plain view exception to the warrant requirement. The United States Supreme Court considered the plain view doctrine in Texas v. Brown (1983), 460 U.S. 730. In Brown, a police officer who stopped the defendant's car during a routine driver's license checkpoint observed an opaque, green party balloon in the defendant's hand. The officer, after shifting his position so that he could see into the open glove compartment, noticed several plastic vials, quantities of a white powder, and an open bag of party balloons. After seizing the balloon, the officer noticed a powdery substance within the tied off portion of the balloon. Appellant was later convicted for possession of heroin. However, in Brown, a Texas appellate court later overturned the appellant's conviction on the rationale that a heroin filled balloon did not fall under the "plain view" doctrine enunciated in Coolidge v. New Hampshire (1971), 403 U.S. 443. Under the Texas court's interpretation of Coolidge, for an item to fall within the plain view exception to theFourth Amendment's warrant requirement, it must be immediately apparent to the officer that he has evidence before him. The appellate court specifically found that it was not immediately apparent to the officer that the balloon contained narcotics. Upon appeal, the United States Supreme Court reversed in an plurality opinion authored by Justice Rehnquist and joined in by Chief Justice Burger, Justice White and Justice O'Connor. "Our reading of Brown suggests that five justices found the search of the container without a warrant justified because no innocent item is commonly carried in an uninflated, tied-off balloon (Powell and Blackmun) and because a balloon is a rare, single-purpose container. (Stevens, Brennan and Marshall)." State v. Telthorster (Dec. 24, 1997), Licking App. No. 97CA87, unreported at 8. This Court in Telthorster considered whether a small, tied-off opaque piece of plastic that was later determined to contain LSD to be "such a rare single-purpose container or a container in which no innocent item is commonly carried." The plastic in Telthorster, which was found in a motel room in a high drug activity area, was located near postal scales, rolling papers and $130.00 in cash. In addition, two officers testified during the suppression hearing in such case that tied-off plastic was commonly used to contain illegal drugs. One of the officers testified that he was unable to recall anytime when drugs were not contained in tied-off plastic under like circumstances. Applying Brown, this Court in Telthorster specifically held as follows in concluding that the tied-off plastic was "such a rare single-purpose container or a container in which no innocent item is commonly carried": "Given all the circumstances surrounding the seizure of the tied-off piece of plastic, the training and experience of the officers, and the uniqueness of the container, we conclude the opaque, tied-off piece of plastic, by its very nature, cannot support any reasonable expectation of privacy because its contents can be inferred from its outward appearance."
Id. at 8-9. The issue thus becomes whether the folded piece of paper in the case sub judice is such a "rare single-purpose container or a container in which no innocent item is commonly carried." that its incriminating nature was "immediately apparent." The Ohio Supreme Court has held that the "immediately apparent" requirement of the `plain view" doctrine is met when police have probable cause to associate an object with criminal activity. State v. Halczyszak (1986), 25 Ohio St.3d 301. In ascertaining the required probable cause, police officers may rely on their specialized knowledge, training and experience. Id. In the case sub judice, appellant, unlike the appellant in Telthorster, was not involved in suspected drug activity or found in a high crime or drug activity area. Moreover, during the suppression hearing in this case, Officer Garavuso, when asked whether the folded piece of paper looked like anything that he had seen before, testified that "[i]t looked very typical to the way certain types of narcotics are — are transported or folded up into paper." Transcript of Suppression Hearing at 18. In addition, the officer testified that based upon what he had seen in the past, the piece of paper appeared to be "packaging of narcotic substance." Transcript of Suppression Hearing at 21. However, when questioned, Officer Garavuso conceded that the contents of the folded piece of paper were not immediately apparent to him. At no point did the officer testify that drugs were always found in similarly folded pieces of paper. We find, therefore, that the "plain view" exception to the Fourth Amendment is not applicable since the folded pieces of paper in this matter were not of such a nature that their incriminating nature was immediately apparent. Based on the foregoing, we find that the trial court erred in overruling appellant's Motion to Suppress. Appellant's second assignment of error is, therefore, sustained.
For the foregoing reasons, the conviction and sentence from the Licking County Court of Common Pleas on one count of possession of heroin in violation of R.C. 2925.11(A)(C)(6)(a) is reversed. This matter is remanded to the trial court for further proceedings.
Edwards, J., Hoffman, J., concur. Gwin, P.J., dissents.