[Cite as *State v. Goss*, 2012-Ohio-857.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

| STATE OF OHIO | C.A. No. 10CA009940 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| SETH A. GOSS | COURT OF COMMON PLEAS COUNTY OF LORAIN, OHIO |
| Appellant | CASE No. 09CR079178 |

DECISION AND JOURNAL ENTRY

Dated: March 5, 2012

WHITMORE, Presiding Judge.

{¶1}    Defendant-Appellant, Seth Goss, appeals from the judgment of the Lorain County Court of Common Pleas, denying his motion to suppress. This Court affirms.

I

{¶2}    At approximately 3:00 a.m. on September 19, 2009, Officer Jason Melda stopped a vehicle due to the fact that the vehicle's license plate was obstructed. The driver of the vehicle pulled into the parking lot of a Certified Gas Station. Before exiting his cruiser, Officer Melda ran the vehicle's plates through his electronic system and discovered the vehicle's owner, Goss, had a suspended license. Upon further investigation, Officer Melda discovered that Goss was driving the vehicle with three active suspensions on his license. Officer Melda arrested Goss and placed him in the back of his cruiser. He then spoke with Goss' only passenger and determined that the passenger was intoxicated and could not drive. Officer Melda told the passenger to secure a ride elsewhere and proceeded to inventory the vehicle for purposes of impounding it.

{¶3}    In conducting his inventory search, Officer Melda discovered a backpack in the vehicle.  He opened the backpack and found several items inside, including a glass pipe, some marijuana, and several bags of mushrooms.  Officer Melda informed Goss what he had found and that Goss was also being placed under arrest for the possession of drugs.  He then returned to the vehicle and continued his inventory search.  Under the driver's seat, Officer Melda found a metal grinder.  He observed that the metal grinder had some green leafy material inside of it and smelled like marijuana.

{¶4}    On November 12, 2009, a grand jury indicted Goss on the following counts: (1) two counts of possession of drugs, both in violation of R.C. 2925.11(A); (2) driving under suspension, in violation of R.C. 4510.11(A); and (3) using or possessing drug paraphernalia, in violation of R.C. 2925.14(C)(1).  On March 8, 2010, Goss filed a motion to suppress, challenging the inventory search of his vehicle.  The court held a hearing on the motion and later denied it on July 14, 2010.  Goss then entered a no contest plea.  The trial court sentenced him to three years of community control.

{¶5}    Goss now appeals from the trial court's judgment and raises one assignment of error for our review.

II

Assignment of Error

THE TRIAL COURT ERRED IN DENYING DEFENDANT-APPELLANT'S MOTION TO SUPPRESS, THEREBY VIOLATING HIS RIGHT TO BE SECURE FROM AN UNREASONABLE SEARCH AND SEIZURE UNDER THE FOURTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND ARTICLE I, SECTION 14 OF THE CONSTITUTION OF THE STATE OF OHIO.

{¶6} In his sole assignment of error, Goss argues that the trial court erred by denying his motion to suppress. Specifically, he argues that Officer Melda improperly impounded and inventoried his vehicle.

{¶7} The Ohio Supreme Court has held that:

> [a]ppellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. *State v. Mills*, 62 Ohio St.3d 357, 366 (1992). Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Fanning*, 1 Ohio St.3d 19 (1982). Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard. *State v. McNamara*, 124 Ohio App.3d 706 (4th Dist.1997).

*State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. Accordingly, this Court reviews the trial court's factual findings for competent, credible evidence and considers the court's legal conclusions de novo. *State v. Conley*, 9th Dist. No. 08CA009454, 2009-Ohio-910, ¶ 6, citing *Burnside* at ¶ 8.

{¶8} The Fourth Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment, prohibits unreasonable searches and seizures. *Accord* Ohio Constitution, Article I, Section 14. "[A] search conducted without a warrant issued upon probable cause is 'per se unreasonable * * * subject only to a few specifically established and well-delineated exceptions.'" *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973), quoting *Katz v. United States*, 389 U.S. 347, 357 (1967).

> [A] routine inventory search of a lawfully impounded automobile is not unreasonable within the meaning of the Fourth Amendment when performed pursuant to standard police practice, and when the evidence does not demonstrate that the procedure involved is merely a pretext for an evidentiary search of the impounded automobile.

*State v. Robinson*, 58 Ohio St.2d 478, 480 (1979). "To determine if an inventory search is valid, the court must first determine whether the police lawfully impounded the vehicle. A vehicle can be lawfully impounded when the occupant of the vehicle is arrested." *State v. Robinson*, 9th Dist. No. 19905, 2000 WL 1587007, *3 (Oct. 25, 2000). This Court has rejected a challenge to an impoundment when there was no evidence of a pretextual motive and the impoundment was conducted pursuant to a standard police procedure. *State v. Wilson*, 9th Dist. No. 2624-M, 1997 WL 416408, *2 (June 23, 1997). *Accord State v. McCants*, 9th Dist. No. 95CA006085, 1995 WL 760388, *1 (Dec. 27, 1995) ("As neither occupant could lawfully drive the car, it was proper for the police to impound the car.").

{¶9} If a vehicle has been lawfully impounded, the validity of the inventory search then must be examined. "The justification for inventory searches stems from three administrative caretaking functions: (1) protecting an individual's property while it is in police custody; (2) protecting the police from claims of lost, stolen, or vandalized property; and (3) protecting the police from danger." *Robinson*, 2000 WL 1587007, at *3. "[I]nventories pursuant to standard police procedures are reasonable." *South Dakota v. Opperman*, 428 U.S. 364, 372 (1976). Moreover, a police department need not have a written policy or practice for inventorying a vehicle. *State v. Biancardi*, 9th Dist. No. 97CA006820, 1999 WL 66198, *2 (Feb. 9, 1999). It is sufficient that some "established routine" exists, and the State can produce evidence of it through testimony. *Id.* The same holds true for closed containers. A standardized policy or practice need not be in writing, but must exist and be articulable. *Id.*

{¶10} Goss argues that Officer Melda unlawfully impounded his vehicle because the Wellington Police Department had no established policy for the circumstances under which an officer may impound a vehicle. He further argues that the impoundment was unreasonable

because other arrangements for the safekeeping of his vehicle might have been made.  We do not agree.

**{¶11}**  Officer Melda testified that it was the policy of the Wellington Police Department to impound a vehicle after an arrest if the vehicle could not be taken by anyone at the scene.  His testimony alone was sufficient to prove that the police department had an established routine, despite the fact that it did not have a written policy.  *Biancardi*, 1999 WL 66198, at *2.  Consistent with the unwritten policy, the record reflects that Officer Melda decided to tow the vehicle after arresting Goss and discovering that his only passenger could not take the vehicle.  Goss has not pointed to any evidence that demonstrates the impoundment here was pretextual.  Rather, Officer Melda followed standard procedure and impounded the car after a lawful arrest.  The record supports the trial court's conclusion that the impoundment was lawful.  *See Robinson*, 2000 WL 1587007, at *3; *McCants*, 1995 WL 760388, at *1.

**{¶12}**  Next, Goss argues that the inventory Officer Melda performed here was unreasonable.  He argues that the Wellington Police Department did not have a standardized policy for inventorying vehicles or any packages contained therein.  We agree, in part.

**{¶13}**  It is undisputed that there was no evidence of a written departmental policy here for vehicle inventory searches.  Officer Melda testified that his department instructed him to perform an inventory search on vehicles before impoundment to create a record of any valuable items that might be inside the vehicle.  Officer Melda explained that he would remove any items of value from the car and record them on his inventory sheet, which he always carried in his vehicle.  In the course of performing his inventory search here, Officer Melda discovered a metal grinder under the driver's seat and a backpack, which he opened.  Officer Melda testified that he

inventoried the car pursuant to his department's oral policy. He admitted, however, that the department did not have a policy for inventorying the contents of containers.

{¶14} Officer Melda's testimony supports the conclusion that the Wellington Police Department had an established, oral policy for inventory searches. Officer Melda followed the department's oral policy by removing items from Goss' vehicle that he believed might have been valuable and recording them in his inventory log in the event they later were lost or stolen. In so doing, Officer Melda acted reasonably and performed a community caretaking function. *See Robinson*, 2000 WL 1587007, at *2. The same cannot be said, however, about the backpack that Officer Melda opened while performing his inventory search. "If, during a valid inventory search of a lawfully impounded vehicle, a law-enforcement official discovers a closed container, the container may only be opened as part of the inventory process if there is in existence a standardized policy or practice specifically governing the opening of such containers." *State v. Hathman*, 65 Ohio St.3d 403 (1992), paragraph two of the syllabus. Because Officer Melda admitted that his department did not have any standardized policy for inventorying containers, his search of the backpack was unlawful. *State v. Peagler*, 76 Ohio St.3d 496, 502 (1996), quoting *Hathman*, 65 Ohio St.3d at 408. Goss is partially correct in his assertion that the search of the vehicle was unlawful. Yet, that conclusion does not end the analysis.

{¶15} "Under the doctrine of 'inevitable discovery,' evidence obtained even in violation of a Constitutional right may be admitted if it can be shown that such evidence would ultimately and inevitably have been discovered lawfully." *State v. Mitchell*, 9th Dist. No. 17029, 1995 WL 678624, *7 (Nov. 15, 1995). In addition to the contraband inside the backpack, Goss' vehicle contained a metal grinder. The grinder was not inside of a container. Officer Melda found the metal grinder underneath the driver's seat and testified that it smelled like marijuana and had

"some green leafy material within it." The metal grinder was contraband and established probable cause. "Once a law enforcement officer has probable cause to believe that a vehicle contains contraband, he or she may search a validly stopped motor vehicle based upon the well-established automobile exception to the warrant requirement." *State v. Moore*, 90 Ohio St.3d 47, 51 (2000), citing *Maryland v. Dyson*, 527 U.S. 465, 466 (1999). Further, "[i]f probable cause is present to search a vehicle, then the police can search the vehicle and containers in the vehicle's * * * compartment without a warrant, under the commonly known 'automobile exception.'" *State v. Bencic*, 9th Dist. No. 16895, 1995 WL 256188, *4 (May 3, 1995), citing *United States v. Ross*, 456 U.S. 798 (1982).

{¶16} A completion of the lawful inventory search here would have allowed Officer Melda to search Goss' backpack once the metal grinder established probable cause. The contraband inside the backpack inevitably would have been discovered as a result of the lawful inventory search. The fact that Officer Melda opened the backpack first is not dispositive. "The exclusionary rule * * * does not require the prosecution to be placed in a position worse than if the misconduct had not occurred." *State v. Harvey*, 9th Dist. No. 2819, 1994 WL 30491, *1 (Feb. 2, 1994). In completing the lawful inventory search here, the contraband in Goss' backpack "would have been ultimately or inevitably discovered during the course of a lawful investigation." *State v. Perkins*, 18 Ohio St.3d 193 (1985), paragraph one of the syllabus. Accordingly, the law does not require the suppression of the evidence Officer Melda discovered. *Mitchell*, 1995 WL 678624, at *7.

{¶17} The trial court correctly denied Goss' motion to suppress. Consequently, his sole assignment of error is overruled.

III

**{¶18}** Goss' sole assignment of error is overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.

Judgment affirmed.

―――

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

BETH WHITMORE
FOR THE COURT

DICKINSON, J.
CONCURS

BELFANCE, J.
CONCURS IN PART AND DISSENTS IN PART, SAYING:

{¶19} I concur in the majority's conclusion that the impoundment was proper. However, I respectfully dissent from the majority's conclusion that the inevitable discovery doctrine applies in this case. The majority assumes that Officer Melda did not complete his inventory search and thus concludes that Officer Melda would have discovered the grinder prior to completing the inventory search. However, the record indicates that Officer Melda had already completed his inventory search and that he began to examine the items he had taken from the vehicle. Thus, the only reason he discovered the metal grinder was because he illegally searched Mr. Goss' backpack and then conducted a second search after discovering the contraband in Mr. Goss' backpack.

{¶20} Regarding the impoundment, I concur that it was valid. In assessing the reasonableness of the initial decision to seize or impound the vehicle, the consideration is twofold: first, whether the impoundment is permissible under any statute or ordinance, and second, whether, under the facts and circumstances, the seizure is nonetheless a pretext for an evidentiary investigation. *See, e.g., Blue Ash v. Kavanagh*, 113 Ohio St.3d 67, 2007-Ohio-1103, ¶ 12. While impoundment could be technically authorized by virtue of a statute or ordinance, it is nonetheless constitutionally infirm if prompted by investigatory motive rather than an actual community caretaking function. For example, a person may be stopped and arrested under circumstances where it is technically permissible to impound a vehicle, however, the impoundment is unreasonable. *See, e.g., State v. Simpson*, 95 Wash.2d 170, 172, 190-192 (1980) (impound improper where defendant arrested at home and truck was lawfully parked in front of defendant's house); *State v. Peterson*, 583 S.W.2d 277, 281-282 (Mo.App.1979) (concluding that impoundment was pretextual when defendant was arrested inside an apartment and his vehicle

was legally parked on a residential street).  For this reason, in assessing the reasonableness of the decision to impound, the critical inquiry is to determine whether the decision to impound is mere pretext to conduct an evidentiary search as opposed to being necessitated by valid community caretaking rationales.  *Blue Ash* at ¶ 17-20 (finding no evidence in record of pretext in decision to impound vehicle); *United States v. Duguay*, 93 F.3d 346, 353 (7th Cir.1996) (impound improper where defendant's girlfriend had driven the car, had possession of keys and was prepared to remove car from the street and defendant's brother and son of title owner was also present at time of arrest and was thus unrelated to any valid caretaking function).

{¶21}  In the matter before us, Officer Melda stated that it was his department's policy to impound a vehicle upon the arrest of its driver.  Standing alone, impoundment on this basis alone could be unreasonable and unrelated to any legitimate caretaking function. However, this was not the only evidence concerning the Officer's ultimate decision to impound.  Officer Melda also stated that he evaluated whether the passenger riding with Mr. Goss could take the vehicle but concluded that she was too intoxicated.  Mr. Goss did not offer any evidence challenging this testimony.  The evidence also established that the stop occurred at 3:00 a.m. and that the vehicle was located in a position that could obstruct other drivers trying to get to and from the pumps, potentially creating a hazard.  In addition, there is no evidence that there was a reasonable alternative to impoundment, and it is unclear whether the vehicle could be lawfully parked and retrieved within a reasonable period of time.  Therefore, I concur with the majority that the decision to impound was not pretextual.

{¶22} Turning to the issue of the search, generally, an inventory search conducted according to standard procedures is reasonable. *South Dakota v. Opperman*, 428 U.S. 364, 376 (1976).  During his testimony, Officer Melda explained his procedure for conducting an

inventory search: "[T]he way I do [an inventory search] * * * is I'll go through the vehicle first, pull the important items of value and place them * * * on the seat, and then go back and get the inventory sheet and write the items down." The video of the stop clearly shows Officer Melda searching Mr. Goss' vehicle and putting them on the seat to inventory them. *After* completing his search of the vehicle, Officer Melda opened Mr. Goss' backpack and discovered the drugs. Officer Melda walked to his cruiser to inform Mr. Goss that he was under arrest for possession of drugs and then returned to Mr. Goss' truck and conducted a *second* search. It was during this second search that Officer Melda discovered the grinder that the majority uses to justify its conclusion that the discovery of the drugs in Mr. Goss' backpack was inevitable.

**{¶23}** The majority correctly concludes that the search of Mr. Goss' backpack was illegal because it was not conducted according to a standard procedure. However, the majority then uses evidence discovered during the subsequent search, which would have never occurred *but for* the contraband being discovered during the illegal search of Mr. Goss' backpack, to justify the application of inevitable discovery exception. This second search did not fall within the inventory-search exception because the inventory search had been completed; instead, it was premised upon probable cause provided by the items discovered in Mr. Goss' backpack. However, because the probable cause arose from items discovered during an illegal search, all evidence discovered during this second search must be suppressed as "'fruit from a poisonous tree' * * *." *Wong Sun v. United States*, 371 U.S. 471, 487-488 (1963); *see, e.g., State v. Cooper*, 2d Dist. No. 23719, 2010-Ohio-1120, ¶ 22 (suppressing all evidence obtained subsequent to a traffic stop that violated the Fourth Amendment). While "[t]he exclusionary rule * * * does not require the prosecution to be placed in a position worse than if the misconduct had not occurred[,]" the inevitable discovery exception does not permit the State to use "fruit of the

poisonous tree" to retroactively rehabilitate the originally illegally obtained evidence. *State v. Harvey*, 9th Dist. No. 2819, 1994 WL 30491, *1-2 (Feb. 2, 1994).

**{¶24}** Furthermore, even assuming that only one inventory search occurred, Officer Melda still deviated from the standard routine or procedure described in his testimony. He searched the car, put the items he believed to be valuable on the seat, and after finding new evidence, searched the car again. Because Officer Melda deviated from the standard inventory procedure, the inventory search was not reasonable. *See Opperman*, 428 U.S. at 376.

**{¶25}** Accordingly, all of the evidence discovered during the two searches of Mr. Goss' car should be suppressed. Therefore, I dissent from the majority's resolution of this issue.

APPEARANCES:

PAUL GRIFFIN, Attorney at Law, for Appellant.

DENNIS P. WILL, Prosecuting Attorney, and MARY R. SLANCZKA, Assistant Prosecuting Attorney, for Appellee.